GORDON v. ÆTNA OIL CORPORATION et al.

No. 10538.

Court of Civil Appeals of Texas. Galveston.

Nov. 4, 1937.

Rehearing Denied Dec. 16, 1937.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellant on motion for rehearing.

Andrews, Kelley, Kurth & Campbell, and J. L. Lockett, Jr., all of Houston, for C. S. Powers and others.

Bryan, Suhr, Bering & Bell and E. H. Suhr, all of Houston, for Hamill Drilling Co.

Edwin Arnold, of Houston, for Daniel Cessud DeWalt, Jr.

John H. Underwood, of West Columbia, for Laura Underwood and Clark Woodson.

Floyd Enlow, of Angleton, for A. L. Holland.

Richard J. Higgins, of Angleton, ad litem for Corrine Clow.

David Evans, ad litem for defendants cited by publication other than Corrine Clow.

John C. Henderson, of Angleton, for Lewis H. Follett and others.

Charles L. Morgan, of Fort Worth, for Danciger Oil & Refineries, Inc.

Carlos B. Masterson, of Angleton, for Aetna Oil Corporation and others.

CODY, Justice.

This suit was brought by plaintiffs in the form of trespass to try title for the recovery of the title and possession of a certain 180-acre tract in Brazoria county, and to remove cloud cast on plaintiffs' title thereto by the claims of the various defendants. Appellant, one of the defendants in the court below, filed a disclaimer to all interest in the 180-acre tract, except such interest as was conveyed to him in the oil, gas, and mineral rights therein by the deed herein below copied; and with reference to the interest not disclaimed appellant pleaded not guilty of the wrongs, injuries, and trespasses alleged; and appellant further pleaded, in bar of plaintiffs' suit against him, the two, four, and ten years' statutes of limitation, respectively. The case was tried without a jury, judgment rendered for plaintiffs, and appellant alone appealed. The trial court duly filed findings of fact and conclusions of law, which fact findings were satisfactory, as none of them have been challenged, and as no "Statement of Facts" has been brought up.

From the findings of fact, the following appears:

The 180-acre tract belonged to Charles Brown and his wife, negroes, in 1906, when the wife died intestate, and her community interest therein vested in her surviving children. On January 13, 1915, Charles Brown executed and delivered to Z. J. Gayle a conveyance of one-sixteenth of the oil, gas, and other minerals, which all parties have construed and confessed to be a conveyance to Mr. Gayle of one-half the royalty production derived from such land. A part of the consideration moving to Brown from Mr. Gayle therefor was Gayle's promise to pay annually, on January 15, while minerals were produced from the land in paying quantities, the sum of $50; the first payment to be

made January 15, 1916; and failure to make payment worked a forfeiture of the rights conveyed by such instrument, Then on the day following the execution of the mineral deed by Brown, Mr. Gayle executed and delivered to appellant the following instrument:

"The State of Texas, County of Jefferson.

"Know all men by these presents: That I, Z. J. Gayle of Brazoria County, Texas, for and in consideration of one Thousand ($1000.00) dollars paid and payable as follows, to-wit: Five Hundred ($500) Dollars cash, the receipt whereof is hereby acknowledged, and five hundred ($500) Dollars payable on or before the 14th day of February, 1915, by deposit to the credit of the said Z. J. Gayle in the Gulf National Bank of Beaumont, Texas, have this day granted, bargained, sold and conveyed and by these presents do hereby grant, bargain, sell and convey unto W. D. Gordon, of Jefferson County, Texas, the following described property situated in Brazoria County, Texas, to-wit:

"First Tract: An undivided one-half (½) of the oil, gas and mineral rights, conveyed to me by Chas. L. Brown (or Charlie) of Brazoria County, Texas, as is evidenced by his mineral deed to me of date January 13, 1915, which deed conveyed to me one-sixteenth (⅟₁₆) of the oil, gas and mineral rights owned by the said Brown in and under all of his land in Brazoria County, Texas, and reference is here made to said Brown's deed which is of record in said County for more particular description (with other land).

"To have and to hold unto him the said W. D. Gordon, his heirs and assigns, the said undivided one-half interest of my interest in the above described premises. And I hereby declare that the said interest so evidenced by the deeds above recited to myself is free and unincumbered and as such is conveyed to the said W. D. Gordon to the extent of one-half as aforesaid.

"It is understood, however, that the said W. D. Gordon has this day executed his promissory note due on or before thirty (30) days from this date, payable to the said Gayle for the sum of five hundred ($500.00) Dollars and has the right and option to relinquish and forfeit his interest so conveyed by this deed in lieu of paying said note. And if he fails to pay said note as above provided on or before

February 14th, 1915, his rights hereunder shall be forfeited and the Five hundred dollars this day paid in cash shall be held as liquidated damages.

"Witness my hand at Beaumont, Jefferson County, Texas, this 14th day of January, 1915.

"Z. J. Gayle."

Appellant, who was then and is now a lawyer, drafted the foregoing instrument. At that time a well was being drilled upon nearby land, but it came in dry before February 14, 1915. Appellant did not pay his $500 note by depositing the money in the Gulf National Bank, nor at all; but refused to pay, though Mr. Gayle went to Beaumont to try to collect payment. Appellant also refused to execute the release that Mr. Gayle requested.

It further appears from the trial court's findings of fact that Mr. Gayle paid Brown the $50 annually until 1917, when he sold to D. R. Beatty the entire interest he had acquired from Brown. Thereafter, D. R. Beatty kept up the $50 annual payments to Brown, until Brown's death in 1920. And after Brown's death Mr. Beatty tendered its payment to Brown's independent executor, who refused to accept it. Then, on August 20, 1925, Mrs. Nettie E. Beatty, the surviving wife of, and sole beneficiary and independent executrix under the will of, D. R. Beatty, filed suit against Brown's executor, and the heirs of Brown and wife (the word "heirs" is loosely used to include those who succeeded to the Brown estate whether by will or descent and distribution), to recover the one-sixteenth of all oil, gas, and other minerals (being one-half of the royalty production) conveyed to D. R. Beatty by Mr. Gayle. By an agreed judgment in that suit, Mrs. Beatty recovered the interest she sued for.

After appellant refused to pay his note due February 14, 1915, Brown and his heirs executed mineral leases at various times, in which appellant did not join, and was not mentioned.

By reason of a producing well now located on the 180-acre tract, it has become very much more valuable than it was when Mr. Gayle delivered the above-copied instrument to appellant.

Appellant has advanced the claim in this suit that Gayle, in executing and delivering the conveyance under which appellant claims, copied above, and which appellant himself drafted, impliedly covenanted that

the interest thereby conveyed was free of incumbrances; and, further, that the instant Gayle delivered the conveyance, he breached the implied covenant against incumbrances; that the breach of the implied covenant against incumbrances thereby relieved appellant of the obligation to pay the $500 note. In other words, as we understand appellant's contention, it is that the form in which the conveyance was drafted for Gayle by appellant resulted in vesting appellant with title to a ⅟₃₂ portion of the minerals produced from the · 180-acre tract, free from the obligation to pay the $500 specified in the obligation, because of Gayle's breach of the implied covenant.

■ It is true, of course, by force of article 1297, R.S.1925, that the use of the word "grant" or the word "convey" in a conveyance which passes a fee simple, or an estate of inheritance, imposes on the grantor and his heirs an implied covenant against incumbrances in behalf of the grantee, his heirs, and assigns. But if we assume, for sake of argument, that the intention of the statute was to go further than its language, and impose the implied covenant on the grantor's "assigns," as well as upon himself, and his heirs; and if we further assume that, under the facts of this case, the delivery by Gayle to appellant of the above-copied conveyance, constituted a breach of implied covenant; yet it does not follow that the remedy for such breach would be to vest appellant with the estate conveyed to him, free of the obligation to pay the consideration he bound himself to pay. The statute itself provides that the ·remedy for the breach of an implied covenant against incumbrances is a suit on it, in the same manner as if the covenant had been expressly inserted in the conveyance. An express covenant or warranty against incumbrances is a contract collateral to the conveyance. For its breach the covenantee has an action at law to recover any damages he can prove. Appellant does not contend that the estate conveyed to him was lost because of the obligation to pay annually $50 to Brown or his heirs. Indeed, the trial court has found that plaintiffs, Gayle's successors in interest, continue to hold their interest, and have always defended and protected it against loss through any failure to pay the $50 annually. Indeed, Mrs. Beatty vindicated her right·to hold her estate, even against the refusal of Brown's independent executor to accept such annual payment.

If, under the recited facts, appellant was not relieved of his obligation to pay his $500 note on February 14, 1915, by principles of common law, then what principles of equity will entitle appellant to hold the estate conveyed to him in the above-copied conveyance, and not only not offer to pay the note, principal, and interest, but assert that its payment is now barred? We know of none.

■ By the express terms of the conveyance, copied above, appellant had the express right and option to relinquish and forfeit the interest thereby conveyed to him, in lieu of paying his note. The parties expressly agreed that if appellant exercised his option not to pay the note on or before ·February 14, 1915, his rights under the conveyance would be forfeited. Before that day arrived the well then in ·process of being drilled on a nearby tract came in a dry hole. Appellant, as he had the right to do, exercised his right not to pay the note, and to relinquish the estate conveyed to him. The interest that had passed · to appellant by the conveyance thereby repassed to Gayle conformable to the express agreement of the parties, contained in the conveyance.

We have refrained from discussing the legal consequences attendant upon the fulfillment or nonfulfillment of conditions precedent and conditions subsequent, though the law relative thereto is fully set forth in the briefs of the parties; for we think that the agreement made between Gayle and appellant on January 14th fixed the rights of the parties. Appellant, a lawyer, undertook the service of drafting this agreement. ˙ Gayle, a layman, could only have understood it, as drafted, as meaning that if appellant refused to pay his note when due, the estate that was passed to appellant by the conveyance would, by the agreement in the conveyance, pass back to him. No canon of construction known to us requires that we construe the agreement contrary to its clear meaning. Nor do we know of any rule of law that would have operated to prevent the agreement of the parties from taking effect.

We have cited no authorities in support of the law we have enunciated in this opinion. The law enunciated is elementary, and if, on motion for rehearing, it

appears to us proper to cite authorities, we will do so.

The judgment of the trial court is correct, and is affirmed.

Appellees some time ago filed a motion to correct certain miscalculations in the judgment. Upon examination, we find the calculations do not relate to any interest of appellant. It occurs to us that the proper place to make these corrections under these circumstances is in the trial court. For this reason we deny the motion.

Judgment affirmed.

Motion to correct denied.

PLEASANTS, C. J., not sitting.

On Motion for Rehearing.

CODY, Justice.

The motion for rehearing has been carefully considered. Appellant misconstrues the sense in which the word forfeit is used in the agreement in the deed. Gordon it is who has reserved the right and option to relinquish and forfeit his interest in the property by not paying his note. It is obvious the parties intended the word forfeit, as used, in the sense of an intensive of relinquish.

Motion overruled.

PLEASANTS, C. J., absent.