**L. L. SCHELL, Jr., et al., Appellants,**

**v.**

**A. B. BLACK et ux., Appellees.**

No. 3436.

Court of Civil Appeals of Texas.

Eastland.

Feb. 13, 1959.

Eplen, Daniel & Hooper, Lester O. Berg, Abilene, for appellants.

Frank Sparks, Eastland, for appellees.

COLLINGS, Justice.

This suit was brought by A. B. Black and wife, Emma Black against L. L. Schell, Jr., and thirty other defendants to terminate two oil and gas leases because of the lack of drilling operations, production of oil or gas, or payment of annual rental as required by the terms of the leases. One of the leases was a three year lease given by the Blacks to Russell J. Day on December 10, 1953. L. L. Schell, Jr., became a joint owner and operator under that lease. The second lease which is the subject of this controversy was delivered by the Blacks to L. L. (Bob) Suttle on May 10, 1956. Schell was also interested as an owner and operator under the Suttle lease and disclaimed all interest under the Day lease. The defendants, except L. L. Schell, Jr., L. L. (Bob) Suttle, Tom Witten, P. D. Hammer, Avory Adams, H. A. Hubbard, Lewis Cummings and Don Mouser, either disclaimed or failed to appear and answer herein. The above named defendants filed answers denying the allegations of plaintiffs' petition and also filed a cross-action against the Blacks for specific performance. The case was tried without the assistance of a jury and judgment was entered cancelling both leases and removing cloud from plaintiffs' title. The above named defendants have appealed.

This controversy concerns the status of the oil and gas lease executed and delivered by the Blacks to Suttle on May 10, 1956. The lease was of the type commonly known in the oil and gas industry as an "unless" lease. It provided that if drilling operations were not commenced on or before one year, the lease should terminate unless a specified rental was paid before the next anniversary date. The lease also provided that if during the primary term, prior to the discovery of oil, the lessee should drill a dry hole on the land, the lease should not terminate if lessee either timely commenced additional drilling operations or commenced, or resumed, the payment of rentals, as provided in the lease. A dry hole was drilled on the land within a few months after delivery of the lease. The hole was abandoned, no timely additional drilling operations were commenced thereafter and no rental payments were paid or tendered as provided by the lease. The record shows and is undisputed that appellants have not performed drilling operations or paid delay rentals as required by the lease.

The general rule in such cases is that if the lessee fails to perform such drilling operations or pay delay rentals, the lease is terminated. Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Humble Oil & Refining Co. v. Davis, Tex.Com.App., 296 S.W. 285.

Appellants' contention that the Suttle lease has not terminated is based upon their claim that, because of defects in the Blacks' title, there was a breach of warranty which excused them from proceeding with drilling operations or from paying rentals until the claimed title defects were removed.

There was no title examination by Suttle when he secured the lease. In November of 1956, Suttle secured a prospective purchaser of the lease who required a title examination. In the title opinion dated January 22, 1957, certain requirements were made, some of which related to the lease dated December 10, 1953, from the Blacks to Russell J. Day. It was indicated that there was a reported claim of production of oil under the Day lease. The title opinion required that a showing be made of nonproduction under that lease and of the delay rental status thereof. A requirement was also made that a release of Day's lease be obtained or that a trespass to try title suit be instituted to cancel the lease.

In appellants' points of error it is urged that the court erred in cancelling the Suttle lease and in holding appellants have no further rights thereunder because, appellants contend, the facts show that there was a breach of appellees' warranty and covenant of title before the first anniversary date for payment of delay rentals; that appellees waived the payment of delay rentals as a requirement to keep the lease alive; that appellees were estopped from claiming that the lease was not in full force and effect and that the facts show equitable considerations which render it manifestly unjust to declare the Suttle lease at an end. We overrule all of appellants' points of error.

Appellants failed to perform drilling operations or to pay delay rentals on May 10, 1957, as required by the terms of the lease. The Blacks were entitled to maintain a suit to have the lease declared terminated. 31 Tex.Jur. 368.

■■■ Contrary to appellants' contention, there was no showing of a breach of warranty. The existence of a cloud upon, or a question concerning title, does not amount to a breach of warranty. There must be a failure of title, "eviction or its equivalent being necessary" for such an action to be maintained. 12 Tex.Jur. 40, 41; Gibson v. Turner, 156 Tex. 289, 294 S.W.2d 781; Schneider v. Lipscomb Co.

Nat. Farm Loan Ass'n, 146 Tex. 66, 202 S.W.2d 832, 172 A.L.R. 1. In the instant case there was no failure of title, no eviction nor the equivalent thereof. The court found that the Blacks were entitled to have the Day lease forfeited. If a breach of warranty had been shown on account of the Day lease, appellees would under the facts still be entitled to have the Suttle lease terminated. The remedy of a grantee for a breach of warranty is generally a suit for damages, for the cancellation if the breach is accompanied by equitable grounds. 37–A Tex.Jur. 314; Gordon v. Aetna Oil Corp., Tex.Civ.App., 110 S.W.2d 1007 (Writ Ref.); Fair v. Miller, Tex.Civ.App., 69 S.W.2d 558. In certain types of cases, as when a warrantor seeks judgment for the agreed purchase price, the grantee may urge breach of warranty as a defense. 12 Tex.Jur. 67, 68. But, in the absence of equitable considerations, a mere breach of warranty by a lessor is not a defense to his suit to terminate an oil and gas lease because the lessee failed to perform drilling operations or pay delay rentals when the terms of the lease provide that it shall terminate unless such covenants and agreements are complied with.

■■■ We are unable to agree with appellants' contention that equitable consideration existed which rendered it manifestly unjust to declare the lease at an end and that appellees waived the payment of delay rentals and were estopped from claiming that the lease was not in full force and effect. Appellants Suttle and Schell took the lease from the Blacks without title examination. The claimed defect in the title was the status of the Day lease. Mr. Schell was a joint owner and operator under the Day lease and had full knowledge of the existence and status of the lease at the time and in this suit has disclaimed all interest thereunder. Soon after May 10, 1956, the date of the execution of the Suttle lease, appellants started drilling. The well did not produce oil in paying quantities and appellants ceased their efforts to produce oil therefrom in December

of 1956 or January of 1957. During January of 1957, appellants disconnected the electric power with which the well was to be pumped. No additional drilling was done by appellants. The rental was not paid on May 10, 1957, the anniversary date of the lease. No offer of rental payment was made until the month of August, 1957. Mr. Black refused to accept the tardy tender of rentals by Mr. Suttle and Mr. Schell and stated to them that it was too late. There is evidence to the effect that after May 10, 1957, appellants, with the knowledge and co-operation of Mr. Black, expended some effort to correct the alleged defects in the title to the land and made arrangements with attorneys to institute suit for that purpose. This evidence would indicate a waiver of the rental payment. Mr. Black testified, in effect, however, that he did not consent to, or participate with appellants in any such effort and that they never talked to him about it; that they only talked to him earlier about selling the lease. He testified that he did not know of efforts on their part to correct title defects after May 10, 1957, until long after the lease had terminated; that the only dealing he had with lawyers during this period concerning the title to his land was the instant suit which he brought to have both the Day and Suttle leases declared terminated and cancelled. In support of the judgment we must assume that the trial court found this testimony to be true and that there was no waiver of rental payments and no estoppel to claim a forfeiture of the lease.

The judgment of the trial court is affirmed.