**B. L. CORLEY et ux., Appellants,**

**v.**

**OLYMPIC PETROLEUM CORPORATION, Appellee.**

**No. 7740.**

Court of Civil Appeals of Texas.

Texarkana.

May 17, 1966.

Rehearing Denied June 7, 1966.

Neal E. Birmingham, Linden, for appellants.

Tom Steele, Linden, Trotter, Childs, Fortenbach & McClure, Houston, for appellee.

FANNING, Justice.

This is a declaratory judgment suit by appellee, Olympic Petroleum Corporation, against appellants, B. L. Corley and wife, Orilla Betts Corley, to declare an oil, gas and mineral lease to be valid and in full force and effect and to quiet the title of appellee to said mineral lease. Appellants in defense contended that the lease had terminated because annual delay rental was not timely paid. Trial was to the court without the aid of a jury, and judgment was entered for appellee. Appellants have appealed.

The lease in question, a standard form of Producer's 88 commercial lease, with pooling provisions, was executed on August 1, 1960, by appellants as lessors, to Stubblefield,

lessee, covering 140 acres of land in Cass County, Texas. The lease is for a primary term of 10 years from August 1, 1960, and as long thereafter as oil, gas or other mineral is produced from the land covered thereby or pooled therewith in accordance with the pooling provisions of said lease. The lease was assigned to Olympic on July 29, 1963.

The terms of the lease obligate the lessee to commence drilling operations within one year from the date of the lease. There are, however, customary provisions granting the lessee an option to defer drilling operations during each annual period of the lease by the payment or tender of delay rentals to the lessor. The provisions of the lease in this regard are:

"5. If operations for drilling are not commenced on said land or on acreage pooled therewith as above provided on or before one year from this date, the lease shall then terminate as to both parties, unless on or before such anniversary date Lessee shall pay or tender to Lessor or to the credit of Lessor in Morris County National Bank at Naples, Texas, (which bank and its successors are Lessor's agent and shall continue as the depository for all rentals payable hereunder regardless of changes in ownership of said land or the rentals) the sum of One Hundred Forty and no/100 Dollars ($140.00), herein called rentals), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. *The payment or tender of rentals under this paragraph and of royalty under paragraph 3 of any gas well from which gas is not being sold or used may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment * * *.*" (Emphasis added)

No well or drilling operations were commenced on the property covered by the lease prior to August 1, 1964, nor thereafter to the date of the trial. It is undisputed that annual delay rentals were timely paid for each of the periods covering August 1, 1961, 1962, and 1963.

On July 25, 1964, appellee, in order to avail itself of the privilege of deferring drilling obligations under the lease for the annual period commencing August 1, 1964, caused to be placed in the U. S. registered mails its good and valid check, duly and properly drawn, for the full amount of the annual delay rentals, plus (.50¢) to cover bank handling charges, in an envelope properly addressed to the depository bank, together with appropriate directions to said bank to deposit same to the credit of appellants. The envelope containing the check was transmitted in the registered U. S. mails by the U. S. Post Office Department to the Post Office terminal at Texarkana, Texas, where it was received on July 27, 1964, and was on that same date dispatched by the Post Office Department from Texarkana, Texas, to Naples, Texas, its intended destination. However, the envelope never reached Naples, Texas, although according to the testimony of Post Office official Starr, it should have been received in the regular course of the mails by the Postmaster at Naples not later than 7:00 A.M. on July 27, 1964.

Upon being informed by the Post Office Department of the apparent loss in the mails of the check above referred to, appellee instructed its attorneys to mail another check to the depository bank. Thereupon, on or about August 28, 1964, appellee's attorneys mailed their check in the same amount, i. e., $140.50, to the depository bank with a letter explaining the loss of appellee's check in the mails and requesting the bank to accept their check on behalf of appellee in lieu of the lost check, and to

deposit same to the account of appellants in accordance with the terms of the lease. This check was a good and valid check, which was received and negotiated by the bank and was later deposited to the account of appellants in depository bank on September 15, 1964.

On or about October 30, 1964, appellants notified appellee's attorneys by letter of such date that they, appellants, considered the lease terminated and tendered the return of the amount deposited in the depository bank to their credit from the proceeds of appellee's attorneys' check of August 28, 1964. Appellee's attorneys refused to accept such tender thereof by appellants and this suit was thereafter instituted. It is also shown by undisputed evidence in the record that the 1965 delay rental was paid to the depository bank prior to August 1, 1965, and is being held by said bank.

The controversy between the parties is centered around the failure of appellee's check for delay rentals to be received by the depository bank prior to August 1, 1964, with appellants contending that the lease terminated by reason thereof, and with appellee contending that the lease specifically authorized the mailing of the check to the depository bank, which was properly done, and that the lease had not terminated.

Appellants in their brief rely upon the case of Appling v. Morrison, Tex.Civ.App., 227 S.W. 708, no writ (1921) and cases of like import. However, the lease in the Appling case did not contain any provision providing for or authorizing payment of rentals by mailing and the delay rentals in that case were not deemed to be paid until the remittance was actually received by the depository bank named in the lease. The distinction is recognized and stated by Summers, citing the Appling case, as follows:

"Where there is no provision in the lease * * * providing payment by mailing, and the lease merely provides that payment of rentals may be made to the lessor or to his credit in a named bank, the rent is not paid until the remittance is received by the lessor or by the named bank with proper instructions to credit it to the account of the lessor. In such a situation it has been held that where the lessee mailed a rental check to the depository bank in time to be received by it in the due course of mail on or before the date of payment, but the remittance did not reach the bank until two days after the due date, mailing did not constitute payment and that the lease terminated because of non-payment of rental. 2 Summers, Law of Oil and Gas, Per.Ed. 434, § 344.

"* * *

"On the other hand, an oil and gas lease may expressly provide for the payment of delay rentals by the mailing of a check, draft or other form of remittance to the lessors. In such a situation, the postal service is made the lessor's agent to deliver the remittance and proper mailing, although it is never delivered, constitutes payment. 2 Summers, Law of Oil and Gas, Perm.Ed. 433, § 344."

In this connection also see the following authorities: Phillips Petroleum Co. v. Harnly, Tex.Civ.App., 348 S.W.2d 856, wr. ref., n. r. e. (1961); Hitz v. Ohio Fuel Gas Co., 43 Ohio App. 484, 183 N.E. 768 (1932); Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460 (1948); Nelson Bunker Hunt Trust Estate v. Jarmon, Tex.Civ.App., 345 S.W.2d 579, wr. ref. (1961).

In Phillips Petroleum Co. v. Harnly, supra (348 S.W.2d 856) where there was a similar provision authorizing the mailing of a check for a shut-in rental, and where the lessor's address appeared in the lease and the lessee used this address in mailing a shut-in rental payment to the lessor, it was held that the "unless" lease was not terminated for non-payment, although the rental was received by the lessor after the due date. The court said:

"The lessee had a right to rely on the address found in the lease in the absence

of a notice of a change of such address. It is well settled in this State that the lessee under 'unless' leases has a determinable fee, and that if he fails to drill or pay rentals when due his lease is terminated. The application of this rule has been relaxed in some cases. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355; Hamilton v. Baker, 147 Tex. 240, 214 S.W.2d 460; Mitchell v. Simms, Tex.Com.App., 63 S.W.2d 371. We are of the opinion the facts of this case bring it within this rule laid down in those cases cited above."

The case of Gillespie v. Bobo, 5 Cir., 271 F. 641 (1921), relied upon by appellants, is clearly distinguishable from the case at bar. It was also distinguished in the Harnly case, supra (348 S.W.2d 856), as follows:

"No case has been cited nor have we found one which presents the exact situation involved here. Gillespie v. Bobo, 5 Cir., 271 F. 641, involved the mailing of delay rentals addressed to the lessor at Box 43, Fort Worth, Texas, rather than Box 43-A, Fort Worth, Texas. The letter A designated a rural route and the city post office boxes were designated by numbers only. The court there held the lease terminated because of lessee's failure to comply strictly with the terms of the lease. This case is distinguished from the instant case in several respects. In the Gillespie case, the address of the lessor was not inserted in the lease and lessee sought the address from a third party. Lessor's address was correctly given to lessee, but either by mistake or accident the letter A was omitted from the address when the envelope was being prepared for mailing."

We hold that the trial court rendered a correct judgment under the record in this cause.

The judgment of the trial court is affirmed.

CHADICK, C. J., concurs.

DAVIS, J., dissents.

### DISSENT

DAVIS, Justice.

I dissent. I drew this case and wrote the following opinion, which I now file as my dissent with minor changes.

This is a declaratory judgment suit by appellee, Olympic Petroleum Corporation, against appellants, B. L. Corley and wife, Orilla Betts Corley, to construe and declare an oil, gas and mineral lease to be valid and in full force and effect. The appellants answered and petitioned for a summary judgment, asking the court to declare the oil, gas and mineral lease to have terminated. The case was tried before the court, without a jury, and judgment was entered in favor of appellee. Appellants have perfected their appeal and bring forward five points of error.

### History

On August 1, 1960, appellants, as lessors, executed an oil, gas and mineral lease to Charles Stubblefield, lessee, on 140 acres of land situated in three different headright surveys in Cass County, Texas. The lease was assigned to Olympic Petroleum Corporation on July 29, 1963. The lease provides for the payment of $140.00 per year delay rentals, or to begin drilling operations. All delay rentals were paid through August 1, 1963. The lease is an "unless" lease, and merely gives the lessee or the assigns the option to pay the annual delay rentals or begin drilling operations. According to the record, appellee mailed a check by registered letter to the depository, Morris County National Bank of Naples, Texas, on July 25, 1964. The letter and the check was never delivered to the bank by the U. S. mails. There is a mix-up in the testimony that was offered at the trial. A witness for the post office swore that the registered letter that was mailed by appellee was dispatched to the Texarkana Mail Terminal on July 15, 1964. There is no showing that

the registered letter arrived at the Mail Terminal in Texarkana on July 27, 1964. The registered number is 816,705. The witness from the post office swore that the control guide had five items listed. The second item was Registered No. 815,705, from Houston, Texas. The witness further swore that the registered letter should have reached the bank in Naples, Texas, by 7:00 o'clock a. m. If the registered letter reached the post office in Texarkana on July 27, 1964, it should have been delivered to the Morris County National Bank at Naples, Texas, that same day. Through some negligence on the part of the mails the letter and check was never delivered. This act was through no fault at all on the part of the lessors. The lease contains the following provisions:

"* * * The payment or tender of rental under this paragraph * * * may be made by the check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. * * *"

## Opinion

In construing the provisions of the lease it merely provides that the rentals "may" be made by the check or draft of lessee, "mailed" to the parties entitled thereto, or to said bank on or before the date of payment. This provision is merely permissible, not mandatory. The lease does not "*expressly provide*" for the payment of delay rentals. Mailing the delay rentals is only permissible. The lessee, in truth and in fact, admitted that the mails was not the agent of the lessors, because on August 28, 1964, the attorneys for the lessee issued another check and delivered it to the depository, Morris County National Bank, which check was finally negotiated by the bank on September 15, 1964, a month and a half too late to pay the delay rentals. Thereafter, the lessors

returned this money by check to the appellee, with the notation that the lease had terminated under its own terms. It seems to be the law in Texas that where delay rentals are paid late, which are occasioned by delay in the mails, the lease terminates. 42 T.J.2d 480 § 222; Appling v. Morrison (CCA 1921), 227 S.W. 708, N.W.H.; Gillespie v. Bobo, 271 F. 641; Weiss v. Claborn (CCA 1920), 219 S.W. 884, err. ref.; Morriss v. First Nat. Bank of Mission (CCA 1952), 249 S.W.2d 269; Thornton Oil & Gas, 1960 Cumulative Supp. § 259; Thuss, 2d Ed., Texas Oil & Gas 110, § 80; Keeler v. Dunbar (5 Cir.1930) 37 F.2d 868; Schell v. Black (CCA 1959), 321 S.W.2d 373, N.W.H.

The appellee takes the position that, by rule of equity, the lease should be declared to be in full force and effect because the delay rentals were mailed in time to reach the depository bank prior to the expiration date. Since the lease terminated under its own terms, there can be no equitable relief. See the above cases cited. 42 T.J.2d 464 § 216; 42 T.J.2d 590 § 265; 42 T.J.2d 617 § 283.

It is not pointed out in the main opinion in this case that the lessors appointed the U. S. mails as their agent. According to the terms of the lease, the lessee could have mailed the check to the lessors or to the depository; or, they could have delivered it personally. If the majority opinion is correct, then a judgment should be rendered in favor of the lessee for the money back that they paid through their attorneys on August 28, 1964. If the U. S. mail was the agent of the lessors, the lessors were not entitled to the money, because it got lost in the mail.

The lease had terminated. I would sustain the points of error.

I would reverse the judgment of the trial court and render the same.